John B. HARALSON, et al., Plaintiffs,

v.

The FEDERAL HOME LOAN BANK
BOARD, et al., Defendants.

Civ. A. Nos. 86–1218, 86–1270.

United States District Court,
District of Columbia.

Nov. 18, 1987.

Stephen D. Susman, Randall W. Wilson, Susman, Godfrey & McGowan, Houston, Tex., Judah Best, Ronald S. Cooper, Howard H. Stahl, Steptoe & Johnson, Washington, D.C., for plaintiffs.

Kirk K. Van Tine, Baker & Botts, William K. Black, Paul W. Grace, Peter A. Moir, Federal Home Loan Bank Bd., Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This matter is presently before the Court on the motion of defendants for reconsideration. By Memorandum Opinion and Order, filed January 13, 1987, this Court granted the motion of plaintiffs which challenged the Bank Board's classification of assets regulations. *Haralson v. FHLBB*, 655 F.Supp. 1561 (D.D.C.1987). It was held that due to inadequate notice, R41b could have no binding effect on plaintiffs.

Defendants move for reconsideration asserting that facts not previously before the Court with respect to R41b resulted in an incomplete and inaccurate factual record in that all interested parties had actual notice of the terms of R41b. Moreover, defendants contend that the utilization of R41b in the final rules was a logical outgrowth of the rulemaking process.

Plaintiffs oppose the motion for reconsideration arguing, consistently with their earlier position, that R41b, a mere informal memorandum that allowed no public comment, is now being utilized to write-down loans with neither notice nor opportunity to comment on it and is clearly not a logical outgrowth of the rulemaking process.

Defendants support their contention that all plaintiffs had actual notice of the terms of R41b before the NPRM and the Final Classification of Assets Regulations were issued with affidavits and exhibits. Plaintiffs do not controvert this evidence.

### I. *Notice*

Section 553(b) of the APA requires that interested parties have notice of proposed rulemaking and of the subject of the rulemaking so that the parties may meaningfully participate therein. There is no dispute that notice of the proposed rulemaking was published in the Federal Register thereby satisfying the first prong of § 553(b). *See* NPRM. Accordingly, the Court must proceed to consider whether there is any merit to plaintiffs' argument that notice of the inclusion of R41b as one of the subjects of the rulemaking was inadequate.

Defendants have demonstrated that in response to the NPRM in question, comments were submitted which expressly addressed R41b.[1] *See* Exhibit H. Defendants conclude, and the Court must agree, that those comments which expressly addressed R41b, submitted in response to the NPRM, provide clear evidence that the NPRM must have "fairly apprise[d] interested parties of the issues involved ...", *Pennzoil Co. v. FERC*, 645 F.2d 360, 361 (5th Cir.) *cert. denied*, 454 U.S. 1142 (1982), allowing for meaningful participation and indicate furthermore that such participation did, in fact, occur. The notice requirements of APA § 553(b) have thereby been met.

The Court must next consider whether notice of the actual text of R41b was adequate. Although the text of R41b was not set out in NPRM published in the Federal Register, there is evidence that all insured institutions, including plaintiffs, had been provided with the full text of

---

1. According to defendants, in the NPRM, the Bank Board made a proposal directly concerning R41b. The Bank Board proposed to stop using R41b as the standard for real estate appraisals. It was suggested by the Bank Board that the examiners be given more discretion to consider other economic factors during the appraisal process. Some of the commenters to the NPRM opposed this suggestion and urged that the Bank Board continue the use of R41b as the appraisal standard.

R41b by the Bank Board as early as 1982. " 'If a person has actual notice of a rule, he is bound by it.... It goes without saying that actual notice is the best of all notices. At most, the Federal Register gives constructive notice." *United States v. Aarons*, 310 F.2d 341, 348 (2d Cir.1962). The facts indicate that plaintiffs had actual notice of the terms of R41b, supplanting the need for the Bank Board to have provided constructive notice by way of the NPRM.

■ Finally, it is evident that plaintiffs had notice of the proposed use of R41b by the Bank Board and the accompanying need for the regulated institutions real estate appraisals to conform with R41b standards in order to avoid adverse consequences. Section 552(a) of the APA requires that a person may not be adversely affected by a matter not published in the Federal Register "[e]xcept to the extent that a person has actual and timely notice of the terms thereof." 5 U.S.C. § 552(a). Defendants have submitted evidence that plaintiffs knew since the early 1980's that the Bank Board requires that appraisals meet the standards of R41b. See Exhibits D through G. In various letters and documents proffered by defendants, plaintiffs repeatedly indicated that they attempted to use appraisals which conform to R41b in order to satisfy Bank Board requirements, evidencing plaintiffs' knowledge of the need for appraisals to conform to R41b as well as the possibility of adverse repercussions by the Bank Board if such were not done. Thus, the Court finds that notice of the use of R41b as an integral part of the regulatory scheme was indeed adequate based on the Bank Board's long standing use of R41b as the definitive appraisal standards to be met by the institutions.

II. *Logical Outgrowth*

■ In a somewhat related line of argument, plaintiffs next assert that the public never had an opportunity to comment on R41b and that even if the content of R41b was widely known within the banking community, the "new use" of R41b was not previously known nor was it a logical outgrowth of the rulemaking.[2] Defendants respond that comments addressing the use of R41b as a part of the regulatory scheme were, in fact, received and that the "new use" is not new but is a logical outgrowth of the prior use of R41b and an integral part of the new classification of assets regulations which were lawfully promulgated.

The proposed regulations made crystal clear that the most important element of any classification system would be a method of securing accurate valuations of the collateral accepted by the regulated institutions as security for loans made by those institutions. One of the many details of the final classification of assets regulations is the utilization of the Bank Board's well known and widely used appraisal standards set forth in R41b. The evidence presented by defendants of the actual notice to plaintiffs of the terms of R41b together with the historical familiarity of the purposes and use of R41b by the Bank Board and the stated purpose of the current rulemaking process leads the Court to agree that, as incorporated in the final classification of assets regulations, the present role of R41b in the regulatory scheme is a logical outgrowth of the rulemaking process of which there was adequate notice and opportunity for comment and in which plaintiffs actively participated. As a result, R41b is a valid provision of the classification of assets regulations and may be utilized by the Bank Board as such with binding effect on the regulated institutions.

While it is true that the proposed rules did not expressly state that the Bank Board would apply the R41b standards to appraisals, it was well known that R41b standards

---

**2.** In the past, if an appraisal did not conform to the standards of R41b, the Bank Board could require that a new appraisal be done. If, under the new appraisal that conformed with R41b the assets value was lower, the lower value had to be reflected on the books. Under the new Regulations, if an appraisal did not comply with R41b the asset could be classified as "substandard" and the value of the asset would have to be written-down accordingly.

had long been used by the Bank Board and that valuation of property was to be an important factor in the classification process. "It is, of course, elementary that a final rule need not be identical to the original proposed rule. The whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different—and improved—from the rules originally proposed by the agency.'" *American Federation of Labor v. Donovan,* 757 F.2d 330, 338 (D.C.Cir.1985). Therefore, it was quite proper for the Bank Board to continue its reliance on R41b as the appropriate means by which to assure the integrity of an appraisal of an asset's worth and interested parties were able to comment meaningfully on the agency's proposal. *See Connecticut Light & Power Co. v. NRC,* 673 F.2d 525 (D.C.Cir.), *cert. denied,* 459 U.S. 835 (1982).

In response to the proposed regulatory scheme described in the NPRM, commenters expressed concern that examiners would be given too much discretion to subjectively appraise asset values. Instead, it was suggested that the Bank Board continue its past reliance on appraisals conducted in conformity with R41b. The standards of R41b were thought to be the most accurate means of evaluating assets securing real estate loans and reliance on those standards was preferable to allowing examiners to make potentially subjective determinations of value.[3] The Bank Board agreed with those comments and in the final rules retained R41b as the basis for appraisal guidelines.

The Board felt, however, that securing compliance with R41b had been a problem in the past. The final regulations were therefore designed to assure better compliance. In order to accomplish this, under the new classification system an asset could be reclassified if that asset's appraisal did not conform to R41b. *See* 50 *Fed. Reg.* at 53,281. This was quite similar to the old system, in that under the old system, if a R41b appraisal resulted in a reduced value for a particular asset, that reduced value was required to be reflected on the books of the association. Thus, the use of R41b to assure accurate reflection of an asset's value continued as before and the value of the asset as reflected on the association's books was based on an appraisal which met R41b standards.

The final rule, with its continued reliance on R41b as the appropriate standard for real-estate appraisals and the rules' requirement that an accurate value be reflected on the association's books, does not "deviate[ ] too sharply from the proposal" such that "affected parties [were] deprived of notice and an opportunity to respond to the proposal." *Small Refiner Lead Phase-Down Task Force v. EPA,* 705 F.2d 506, 547 (D.C.Cir.1983). Ample comments were received by the Bank Board and some of the suggestions made were ultimately adopted by the agency. The stated goal of the notice and comment process was fulfilled. The Court finds the parties had adequate notice to meaningfully participate in the rulemaking process and that the Board's continued reliance on its appraisal standards set out in R41b in the Final Regulations was a "logical outgrowth" of the rulemaking process. *See South Terminal Corp. v. EPA,* 504 F.2d 646 (1st Cir. 1974).

Accordingly, the motion for reconsideration should be granted, the Memorandum Opinion of January 13, 1987, should be set aside, and the motion of plaintiffs for summary judgment on the Classification of Assets Regulation will be denied. An Order

---

**3.** *See* Comment of Hewitt, Olson at 4 (inappropriate to reevaluate real estate on any basis other than appraisal prepared in accordance with R41b); Comment of City Federal Savings & Loan (appraisals prepared in conformity with R41b will adequately address the concerns set forth in NPRM); Comment of Columbia Savings (R41a and R41b address the essence of the valuation objective in that any reevaluation of asset value based on 'economic factors' would be subjective, duplicative and inappropriate); Comment of Commodore Savings (most of the illustrative material to be considered by examiners under the NPRM is either explicitly or implicitly required by R41b); Comment of Houston Savings (same).

consistent with this Memoranda Opinion will be issued herewith.