**LINCOLN SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**FEDERAL HOME LOAN BANK BOARD, et al.**

**No. 87–5363.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 1988.

Decided Sept. 23, 1988.

Rex E. Lee, with whom Carter G. Phillips, Washington, D.C., was on the brief, for appellant.

Thomas J. Segal, Associate Gen. Counsel, Federal Home Loan Bank Bd., with whom Jordan Luke, Gen. Counsel, Jack D. Smith, Deputy Gen. Counsel, Dorothy L. Nichols, Sr. Associate Gen. Counsel, Charlotte M. Kaplow, Asst. Gen. Counsel, and Steven W. Dimmick, Attorney, Federal Home Loan Bank Bd., Washington, D.C., were on the brief, for appellees.

Before BUCKLEY and D.H. GINSBURG, Circuit Judges, and GARTH,* U.S. Senior Circuit Judge for the Third Circuit.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Lincoln Savings and Loan Association appeals from a decision of the district court holding that the Federal Home Loan Bank Board had statutory authority to issue its Direct Investment Rule. The Direct Investment Rule requires thrift institutions insured by the Federal Savings and Loan Insurance Corporation to obtain approval before investing more than a certain percentage of their capital in various categories of investments. Because we agree that the Board has the authority to protect the insurance fund by issuing substantive regulations of this type, we affirm.

## I. BACKGROUND

Lincoln Savings and Loan Association ("Lincoln") is a thrift institution chartered in California and governed by California banking laws. California permits its savings and loans to engage in unlimited "direct" investment in real estate and many types of equity securities. Cal.Fin.Code §§ 7250, 7252, 7300, 7350 (West Supp.1986).

Under federal law, state-chartered banks like Lincoln have the option of obtaining insurance from the Federal Savings and Loan Insurance Corporation ("FSLIC"), which was created by the National Housing Act of 1934, 12 U.S.C. §§ 1724 *et seq.* (1982). The FSLIC reimburses depositors for savings lost when an insured institution fails. The insurance fund is controlled and operated by the Federal Home Loan Bank Board ("Board"). Some states, such as California, *require* their savings and loan institutions to join the FSLIC. Cal.Fin. Code § 5606 (West Supp.1986).

The Board has undisputed statutory authority to take certain steps to protect the integrity of the insurance program. Under 12 U.S.C. § 1730(e) (1982), for example, the

Board may act on a case-by-case basis to prohibit unsafe and unsound practices by insured institutions. Congress has also specifically authorized the Board to adopt substantive rules concerning particular practices, such as issuing loans in distant locations, that pose unacceptable risks. *See, e.g.,* 12 U.S.C. § 1726(b) (1982).

The Board contends that it also has statutory authority to issue substantive regulations other than those specifically authorized by Congress. In response to what the Board terms a "crisis" in the thrift industry, the Board relied on this general rulemaking authority to limit high-risk direct investment practices of insured banks. After an appropriate notice and comment period, the Board promulgated its first direct investment rule on January 31, 1985. 50 Fed.Reg. 6912 (1985).

In essence, the Direct Investment Rule requires that an insured institution obtain approval from the Board's Principal Supervisory Agent prior to making direct investments beyond a certain threshold amount. 12 C.F.R. § 563.9-8 (1988). "Direct investments" are investments in real estate, equity securities, service corporations, operating subsidiaries, and certain land and non-residential construction loans. *Id.* at § 563.9-8(a). The threshold level for a particular association depends on its financial strength. *Id.* at § 563.9-8(c)(2). If an institution wishes to make direct investments that exceed this threshold, it must apply with the Principal Supervisory Agent for permission to make the investment. *Id.* at § 563.9-8(g)(1)-(5). In considering applications of state-chartered institutions, the Principal Supervisory Agent must consult with state banking authorities. *Id.* at § 563.9-8(g)(3)(i).

In this case, Lincoln was denied permission to exceed the threshold investment level and thereupon filed suit in district court. Lincoln argued that the Board lacked statutory authority to adopt the Direct Investment Rule and that, in any event, the regulation is arbitrary, capricious, and an abuse of discretion. Judge

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Gerhard Gesell rejected both claims, awarding summary judgment to the Board. *Lincoln Savings & Loan Ass'n v. Federal Home Loan Bank Board,* 670 F.Supp. 449 (D.D.C.1987) ("Memorandum"). Lincoln's appeal is based solely on the first argument—that none of the three statutory provisions relied on by the district court can be fairly read as authorizing the Board to issue substantive regulations.

## II. DISCUSSION

### A. Preemption

■ Lincoln maintains that because the Direct Investment Rule preempts California banking law, we must presume that the Board did not have authority to promulgate the Direct Investment Rule unless it can point to a "clear statement" of congressional intent. We disagree.

To begin, this is not a preemption case. Lincoln argues that the Direct Investment Rule preempts California law because the two sets of regulations are directly inconsistent. *E.g., Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). The Board responds that the Direct Investment Rule does not technically conflict with California law because Lincoln can comply with both state and federal regulations by adhering to the stricter standards set by the Board.

We reject the Board's analysis but accept its conclusion. The Direct Investment Rule plainly conflicts with California law by preventing state banks from exercising the freedom and flexibility of investment that the state evidently wishes them to have. On the other hand, the Direct Investment Rule cannot be said to preempt California law because membership by state banks in FSLIC is purely voluntary. The only reason a conflict exists is that California requires its banks to belong to the insurance fund. This can hardly be seen as evidence of *federal* preemption of state prerogatives.

In any case, even if the Direct Investment Rule preempts California banking statutes, it does not follow that we may uphold the district court only if we find a "clear statement" that Congress authorized the Board to preempt state law. The Supreme Court has recently reaffirmed that the clear statement rule does not apply to a determination of whether an agency has the *authority* to issue preemptive regulations. When faced with a case of agency preemption,

> the inquiry becomes whether the federal agency has properly exercised its own delegated authority rather than simply whether Congress has properly exercised the legislative power. Thus we have emphasized that in a situation where state law is claimed to be preempted by federal regulation, a "narrow focus on Congress' intent to supersede state law [is] misdirected," for "[a] pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *Fidelity Federal Sav. & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 154 [102 S.Ct. 3014, 3023, 73 L.Ed.2d 664] (1982). Instead, the correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action. The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof. Beyond that, however, in proper circumstances the agency may determine that its authority is exclusive and pre-empts any state efforts to regulate in the forbidden area.

*City of New York v. FCC,* — U.S. —, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988).

So long as an agency has statutory authority to issue regulations, those regulations will preempt inconsistent state statutes by the simple operation of the Supremacy Clause. No further inquiry into Congress' specific intent to bestow authority to preempt is required. As we have previously held, "if the regulations would *otherwise* be valid, their preemptive effect does not invalidate them *unless* Congress has expressed, either explicitly or implicitly, an intent that preemption is *not* within the [agency's] power." *Conference of State Bank Supervisors v. Conover,* 710

F.2d 878, 883 (D.C.Cir.1983) (emphasis original).

Because we see no evidence that Congress wished to deny preemptive authority to Board regulations, we need focus only on the threshold question whether the Direct Investment Rule is "otherwise valid."

## B. Regulation vs. Adjudication

 The district court held that the Board had authority to issue the regulation under two sections of the National Housing Act ("NHA"), 12 U.S.C. §§ 1725 and 1730 (1982), and a single section of the Federal Home Loan Bank Act, 12 U.S.C. § 1437(a) (1982). Memorandum, 670 F.Supp. at 452–54. Because we agree that the Board had the necessary authority under the NHA, we need not consider the latter statute.

### 1. Section 1725(a)

Section 1725(a) provides as follows:

There is created a Federal Savings and Loan Insurance Corporation ... which shall insure the accounts of institutions eligible for insurance as hereinafter provided, and shall be under the direction of the Federal Home Loan Bank Board and operated by it under such bylaws, rules, and regulations as it may prescribe for carrying out the purposes of this subchapter.

12 U.S.C. § 1725(a) (1982).

The district court read this passage as authorizing the Board to promulgate whatever substantive regulations it deemed necessary, consistent with the purposes of the NHA. Lincoln disagrees. It argues generally that Congress purposely declined to give the Board general rulemaking authority for fear that state bank regulators would thereby lose their independence. Instead, Congress gave the Board specific authority to promulgate substantive regulations governing specifically described activities. E.g., 12 U.S.C. § 1726(b) (1982). According to Lincoln, section 1725 thus does not give the Board general rulemaking authority, but is specifically restricted to the issuance of bylaws and regulations governing the FSLIC itself. "It confers power on the Board to regulate the FSLIC but says nothing about regulating the thrifts insured by the FSLIC." Brief for Appellant at 24 (emphasis original).

We are unpersuaded by Lincoln's attempts to cabin the meaning of the provision. Section 1725(a) authorizes the Board to issue "such bylaws, rules, and regulations as it may prescribe for carrying out the purposes of this subchapter" (emphasis added). Subchapter IV of Title 12 of the United States Code is concerned with far more than the operations of the FSLIC. It deals with every aspect of the savings and loan insurance program, one of whose specific purposes is to protect savings through a system of deposit insurance.

The ability of the FSLIC to provide that protection depends in substantial part on the integrity of the fund created under the NHA to meet potential claims. As in the case of other insurers, it is to be expected that the FSLIC would take measures from time to time to require insured institutions to meet certain standards as a condition to continued protection. Otherwise, excessive risks created by the improvident practices of certain institutions could jeopardize the FSLIC's ability to meet its commitments to depositors nationwide. Therefore, absent evidence that Congress intended otherwise, it appears to us that the Board's authority to issue the challenged rule is inherent in its mandate, under section 1725(a), to prescribe the rules and regulations required for carrying out the purposes of the subchapter.

Lincoln supplies scant evidence that Congress intended to withhold such rulemaking authority from the Board. Lincoln notes that Congress did not adopt an early version of the statute that would have granted the Board "full power and authority to do all things provided in this title and full power to do all things necessary or incident to carrying out the purposes of this title." 78 Cong.Rec. 11,388 (1934) (text of bill). In response, we offer two observations: First, we are unconvinced of the utility of trying to second-guess why one or another body of Congress may have decided to eschew a particular statutory formulation in favor of another; second, were we

**1562**

to try in this instance, we would be hard put to read too much significance in the differences that exist between the rejected and enacted language. Under either formulation, the Board is, or would have been, empowered to issue rules for carrying out the purposes of the savings and loan insurance program.

■ We are equally unimpressed by the argument that Congress' specific grant of authority to promulgate certain types of regulations implies an intent to deny the Board general rulemaking authority. *See In re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514, 523 (D.C. Cir.) (existence of specific grants do not "eviscerate a general grant of rulemaking power"), *cert. denied sub nom. Peabody Coal Co. v. Watt*, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981). Indeed, to conclude otherwise would be contrary to the Supreme Court's longstanding view that it is not "a reasonable canon of interpretation [to assume] that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of every evil sought to be corrected." *American Trucking Ass'ns v. United States*, 344 U.S. 298, 309–10, 73 S.Ct. 307, 314, 97 L.Ed. 337 (1953).

### 2. Section 1730

Apart from section 1725, the Board had independent authority to issue the Direct Investment Rule under 12 U.S.C. §§ 1730(e) and (m). Added by amendment in 1966, those sections provide:

> If, in the opinion of FSLIC, any insured institution ... is engaging or has engaged ... in an unsafe or unsound practice ... or is violating or has violated ... a law, rule, or regulation, ... FSLIC may issue ... an order to cease and desist from any such violation or practice.

12 U.S.C. § 1730(e).

> In the course of or in connection with any proceeding under this section, the Corporation ... is empowered to make rules and regulations with respect to any such proceedings.

12 U.S.C. § 1730(m)(3).

While Lincoln acknowledges that the statute authorizes the Board to make sure that insured institutions do not follow unsafe and unsound practices, it asserts that this supervision may only be exercised on a case-by-case basis. Lincoln offers two basic arguments in support of its position. First, the authority granted by section 1730(m)(3) is of limited scope. It empowers the Board to regulate the conduct of the cease-and-desist proceedings referred to under section 1730(e), and nothing more: "Section 1730 authorizes the Board to regulate its own adjudicatory proceedings, not the investment activities of state-chartered thrifts." Brief for Appellant at 21. As the Board had been granted no power to regulate those activities, its enforcement authority was limited "to *case-by-case* adjudication, with appropriate notice and opportunity for correction by state authorities." *Id.* at 23. Second, Lincoln asserts that this reading of the section is consistent with Congress' concern that the authority of the states over state-chartered institutions be respected, as evidenced by the following passage from the Senate Report in support of its interpretation:

> The committee did not wish to take any action which would do violence to the balance between State and Federal functions and responsibilities which underlies the dual banking system and the dual savings and loan system. On the contrary, the committee was in full agreement with the statement ... [that] "... the State banks are chartered by the States, and are operated under State laws, and are responsible first and foremost to the officials of the States which created them.

S.Rep. No. 1482, 89th Cong., 2d Sess. 70, *reprinted in* 1966 U.S.Code Cong. & Admin.News 3532, 3538.

The problems with Lincoln's analysis are twofold. First, this passage sheds no light on the meaning of section 1730. While it clearly reaffirms that states are to remain the primary regulators of state banks, it just as clearly indicates that Congress did not believe that action to prevent unsafe banking practices by the FSLIC would "do violence" to the current balance. The quot-

ed language tells us nothing about the Board's authority to define those practices by means of regulation.

The more serious problem with Lincoln's analysis is that *Independent Bankers Ass'n of America v. Heimann*, 613 F.2d 1164 (D.C.Cir.1979), *cert. denied*, 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980), holds that identical statutory language authorized an agency to issue substantive regulations. In *Heimann*, we considered the meaning of section 1818 of the Financial Institutions Supervisory Act of 1966 ("FISA"), 12 U.S.C. § 1818 (1982), which authorizes the Comptroller to take administrative action against banks engaged in "unsafe or unsound" practices, 12 U.S.C. § 1818(b), and also "to make rules and regulations with respect to any such proceedings." 12 U.S.C. § 1818(n). We held that the statute conferred upon the Comptroller substantive rulemaking authority:

> Indeed, as the language of Section 1818(b) itself suggests, a regulation giving advance notice of conduct which the Comptroller disapproves as threatening to the safety and soundness of the banks he regulates is wholly consistent with the statutory scheme. The Comptroller was given authority to promulgate regulations in order to facilitate execution of his statutory powers. *See* 12 U.S.C. § 1818(n). It would undermine the regulatory purpose of Congress to assume that the Comptroller must proceed solely by separate "cease and desist" cases.

613 F.2d at 1169.

Although *Heimann* relied in part on the Comptroller's extensive authority over *national* banks, 613 F.2d at 1168, our discussion of the language and purposes of FISA in that case are equally applicable here and constrain us to reach the identical conclusion. Where Congress has with identical language charged two agencies to define and take steps against unsafe and unsound banking practices, we decline to hold that *the method* by which the agencies are authorized to go about their tasks turns on whether they supervise federal or state banks particularly where, as here, the enforcement provisions of the NHA do not distinguish between its state and federally chartered members. There is simply no indication that Congress wished to hobble the Board by limiting it to case-by-case proceedings.

## III. Conclusion

The Board had ample authority under the NHA to promulgate its Direct Investment Rule. Accordingly, the judgment of the district court is

AFFIRMED.