# MATTER OF LEMHAMMAD

## In Deportation Proceedings

### A-27935756

### *Decided by Board May 22, 1991*

(1) In a deportation proceeding where the alien is charged with deportability pursuant to section 241(a)(9)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(9)(B) (1988), as an alien whose status as a conditional permanent resident has been terminated under section 216(b) of the Act, 8 U.S.C. § 1186a(b) (1988), the burden is on the Immigration and Naturalization Service to show by a "preponderance of the evidence" that one of the conditions for termination of status described in section 216(b)(1)(A) of the Act has been met.

(2) Original jurisdiction to rule on the merits of an Application for Waiver of Requirement to File Joint Petition for Removal of Conditions (Form I-752) rests only with the appropriate regional service center director, and not the immigration judge.

CHARGE:

Order: Act of 1952—Sec. 241(a)(9)(B) [8 U.S.C. § 1251(a)(9)(B)]—Conditional resident status terminated

ON BEHALF OF RESPONDENT:  
Marilyn L. Wilde, Esquire  
26 Garden Center, Suite 3  
Broomfield, Colorado 80020

ON BEHALF OF SERVICE:  
Elizabeth B. Richards  
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated June 29, 1990, the immigration judge found the respondent deportable under section 241(a)(9)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(9)(B) (1988), denied his Application for Waiver of Requirement to File Joint Petition for Removal of Conditions (Form I-752) ("hardship waiver") on jurisdictional grounds, and denied his application for voluntary departure in lieu of deportation. The respondent has filed a timely appeal from that decision. The appeal will be dismissed.

The respondent is a 26-year-old native and citizen of Jordan. He entered the United States on October 29, 1983, as a nonimmigrant. Subsequently, the respondent married a United States citizen. On June 3, 1988, based on this marriage, the respondent obtained permanent

resident status on a conditional basis pursuant to section 216 of the Act, 8 U.S.C. § 1186a (1988). However, on October 25, 1989, the marriage was terminated by a divorce decree issued by the District Court of Arapahoe County, Colorado.[1]

On May 10, 1990, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) against the respondent, charging him with deportability under section 241(a)(9)(B) of the Act, as an alien whose conditional permanent resident status under section 216 of the Act had been terminated. More specifically, the Order to Show Cause charges that the respondent's status had been properly terminated pursuant to section 216(b) or (c) of the Act. Section 216(b)(1)(A)(i) and (ii) of the Act provide for the termination of an alien's conditional permanent resident status where the Attorney General determines, before the second anniversary of the alien's obtaining his status, that the qualifying marriage was either "entered into for the purpose of procuring [the] alien's entry as an immigrant" or was "judicially annulled or terminated, other than through the death of a spouse." Under section 216(c) of the Act, termination of the alien's conditional permanent resident status is based on his failure to properly file a petition to remove such conditional basis in accordance with section 216(c)(1)(A) of the Act or his failure to appear at the personal interview described in section 216(c)(1)(B) of the Act.

At the deportation hearing, the respondent admitted that he had received notice from the Service that his conditional permanent resident status had been terminated on April 17, 1990. In addition, the respondent admitted that his marriage had been judicially terminated by divorce on October 25, 1989. However, he denied that he had entered into his marriage for the purpose of evading the immigration laws. The Service introduced into evidence a certified copy of the divorce decree and argued that deportability under section 241(a)(9)(B) of the Act had been established, since the respondent's conditional permanent resident status had been properly terminated pursuant to section 216(b)(1)(A)(ii), as an alien whose qualifying marriage had been judicially terminated other than through the death of a spouse. Ultimately, the Service opted not to go forward on the alternate allegation under section 216(b)(1)(A)(i) that the respondent had entered into the marriage for the purpose of procuring immigrant status.

---

[1] On appeal, the respondent contends that the marriage was terminated by divorce after he was a conditional permanent resident for more than 2 years. However, this assertion is inaccurate. The respondent acquired his conditional permanent resident status on June 3, 1988, and he was divorced 16 months later on October 25, 1989.

The respondent also sought relief from deportation by applying for a hardship waiver of the requirement to file a joint petition for removal of conditions and for voluntary departure. Both the respondent and his United States citizen brother testified in support of the respondent's applications for relief. In rebuttal, the Service presented two affidavits, one a transcription of a sworn statement taken from the respondent's ex-wife, and the other an affidavit from a foreign student. In the latter, the foreign student attested that he had paid the respondent money to impersonate him at a local college by attending his classes and taking his exams. In addition, the Service presented two witnesses, the respondent's ex-wife and the Service investigator who had prepared both affidavits.

The immigration judge concluded that the Service had, in fact, met its burden of proof with respect to section 216(b)(1)(A)(ii) of the Act and found the respondent deportable under section 241(a)(9)(B). The immigration judge also found that the "bulk of the testimony" presented at the deportation hearing did not demonstrate that the respondent had entered into the marriage for the purpose of procuring his immigrant status. With respect to the hardship waiver application, the immigration judge determined that he had no jurisdiction to rule on its merits. The immigration judge reasoned that the regulations require that the hardship waiver be filed originally with the regional service center director having jurisdiction over the alien's place of residence. See 8 C.F.R. § 216.5(c) (1991). Since the respondent had never filed a waiver application with the regional service center director, the immigration judge concluded he lacked jurisdiction over the matter.[2] The immigration judge also denied the respondent's application for voluntary departure because, for a fee, the respondent had posed as other foreign students enrolled at a local college and taken final examinations for them. In reaching this conclusion, the immigration judge relied upon the student's affidavit and the testimony provided by the Service investigator.

On appeal, the respondent, through counsel, raises several argu-

---

[2] In his decision, the immigration judge found that there was no evidence in the record that the respondent had filed a Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status (Form I-751) ("joint petition"). The immigration judge also concluded that the regulations require that the petition be filed with the Service within the 90-day period immediately preceding the second anniversary of the date on which the alien obtained his conditional permanent resident status. We agree with the immigration judge's findings. However, we note that the regulations also provide that a Form I-751 may be filed after the 90-day period "only if the alien establishes to the satisfaction of the director, in writing, that there was good cause for the failure to file" it within the prescribed time limit. 8 C.F.R. § 216.4(a)(6) (1991). In addition, after jurisdiction vests with an immigration judge, the joint petition may "terminate the matter upon joint motion by the alien and the Service." 8 C.F.R. § 216.4(a)(6) (1991).

ments. First, the respondent opines that the mere dissolution of a marriage should not be sufficient grounds for deportation under section 216 of the Act. Instead, he believes that where the parties to the qualifying marriage were granted a "no-fault" divorce, the Act should require proof by clear, unequivocal, and convincing evidence that the noncitizen spouse was "at fault" in the termination of the marriage. Secondly, the respondent contends that he qualifies for the hardship waiver. In support of this contention, the respondent discusses the "factors [which he feels] taken together would certainly cry out for a waiver of deportation." However, the respondent does not contest the immigration judge's jurisdictional findings.

With respect to his voluntary departure application, the respondent argues on appeal that the immigration judge abused his discretion in denying it solely on the basis that the respondent had taken courses for other students. The respondent contends that his "taking of several courses" is not "so repugnant" as to constitute a lack of good moral character. In addition, the respondent argues that the Service's use of students' affidavits, rather than oral testimony, denied him his right to due process. Finally, without further explanation, the respondent states the following: "In *Woodby v. INS*, 385 U.S. 276, (1966), the Supreme Court held that the grounds for deportation must be found to be true by clear, unequivocal, and convincing evidence."

The Service brief in opposition to the respondent's appeal basically agrees with the immigration judge's decision. Regarding the denial of voluntary departure, the Service alleges that fraud was inherent in the respondent's money-making scheme on campus. In addition, it is argued that the respondent's criminal conviction of domestic assault, which was not discussed by the immigration judge in his decision, provides further justification for the denial of voluntary departure. With respect to the respondent's hardship waiver application, the Service agrees with the immigration judge's jurisdictional findings. It argues, however, in the alternative, that even if jurisdiction is found to exist, the evidence submitted by the respondent does not rise to the requisite level of extreme hardship.

Pursuant to the Order to Show Cause, the respondent was charged with deportability under section 241(a)(9)(B) of the Act, as an alien whose status as a conditional permanent resident under section 216 of the Act has been terminated.[3] Section 216(b)(1)(A) of the Act provides, in pertinent part, that such termination may occur

---

[3]Specifically, the Order to Show Cause charged that the respondent's conditional permanent resident status was terminated pursuant to section 216(b) or (c) of the Act. Since we find that the respondent's status was properly terminated by the Service under section 216(b) of the Act, we will not address whether termination of his status was also appropriate under section 216(c) of the Act.

if the Attorney General determines, before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence [on a conditional basis], that—

(A) the qualifying marriage—

(i) was entered into for the purpose of procuring an alien's entry as an immigrant, or

(ii) has been judicially annulled or terminated other than through the death of a spouse.

(Emphasis added).

The Attorney General is required to notify the parties involved that the alien's conditional permanent resident status is being terminated.[4] *See* 8 C.F.R. § 216.3(a) (1991). The alien must also have an opportunity to request a review of such determination in a deportation proceeding before an immigration judge. Section 216(b)(2) of the Act. In such a proceeding, the burden of proof is on the Attorney General to establish, by a preponderance of the evidence, that a condition in the above-quoted paragraph (1) has been met. *Id.*; *see also* 8 C.F.R. § 216.3(a) (1991).

On appeal, the respondent questions whether his deportability was established by clear, unequivocal, and convincing evidence in conformity with *Woodby v. INS*, 385 U.S. 276 (1966). Generally, that standard would be applied in deportation proceedings. It is inapplicable here, however, where the plain language of the statute provides for a different burden of proof.

Section 216(b)(2) of the Act states, clearly and unambiguously, that at the deportation hearing of an alien whose conditional permanent resident status has been terminated pursuant to section 216(b)(1) of the Act, the Service bears the burden of demonstrating "by a preponderance of the evidence, that a condition described in [section 216(b)(1)(A)] is met."[5] *See also* 8 C.F.R. § 216.3 (1991). It is well established that if the statutory language is clear and unambiguous, "that language must ordinarily be regarded as conclusive," *North Dakota v. United States*, 460 U.S. 300, 312 (1983), for there is a "strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, 480 U.S. 412, 432 n.12 (1987). For that reason, when Congress defines a term in a statute, that term is plain, and application of the plain meaning rule requires that

---

[4] The respondent conceded that the Service provided him with proper notice concerning the termination of his conditional permanent resident status.

[5] Preponderance of evidence is defined as "evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1064 (5th ed. 1979).

the term be given its statutorily defined meaning.[6] When the language is plain, no further construction of a statute is required, for there is nothing to construe. *See id.* at 445-46 n.29. We look to the legislative history to determine only whether there is "clearly expressed legislative history" contrary to statutory language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses. *See United States v. James*, 478 U.S. 597, 606 (1986); *Consumer Prod. Safety Com'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). In this case, there is no legislative history for the Immigration Marriage Fraud Amendments of 1986 which indicates a congressional intent contrary to our interpretation of the plain meaning of the statutory language. *See* H.R. Rep. No. 906, 99th Cong., 2d Sess. 1, *reprinted in* 1986 U.S.C.C.A.N. 5978.

We find, therefore, that the Service met its burden of proving that the respondent's conditional permanent resident status was terminated under section 216(b)(1)(A)(ii) of the Act. By introducing a certified copy of the divorce decree, the Service established by a preponderance of the evidence that, before the respondent's second anniversary of obtaining his conditional permanent resident status, his qualifying marriage had been "judicially terminated, other than through the death of [his] spouse." Accordingly, we conclude that the respondent's deportability under section 241(a)(9)(B) has been properly established.[7]

---

[6] A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary common meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979).

[7] On appeal, the respondent notes that his wife was granted a "no-fault" divorce by the State of Colorado, i.e., the marriage was found to be "irretrievably broken" without fault of either partner. He argues that a "no-fault" divorce should not be sufficient grounds for deportation under section 216 of the Act since the marriage was terminated without fault of either partner. He further opines that the Act should require proof that "the termination of the marriage was the fault of the non-citizen spouse by clear, unequivocal, and convincing [evidence]." Since counsel for the respondent does not specify whether proof of fault should be demonstrated by the Service or by the alien, we will assume that counsel intended that the requirement should be imposed upon the Service. This argument is one that should be made to Congress. We are an administrative tribunal empowered to interpret the law as set forth in the Immigration and Nationality Act. The relevant provisions of the Act do *not* require a finding of fault, and, accordingly, we will not impose one.

The respondent also argues that "a close reading [of section] 216(b) and (c) leaves the definite impression" that had he, rather than his wife, applied for divorce, the outcome of this case would have been different. We disagree. The requirement that the "marriage be terminated by the alien spouse for good cause" bears only on the issue of the respondent's eligibility for a hardship waiver under section 216(c)(4) of the Act, and not on the issue of deportability under section 216(b)(1) of the Act. We note that during the pendency of the respondent's appeal, Congress enacted section 701 of the Immigration

The remaining issues concern the respondent's applications for relief from deportation. Our initial consideration is with the hardship waiver application because, if it is granted, the respondent would no longer be deportable under section 241(a)(9)(B) of the Act and would be eligible for removal of the conditions on his permanent resident status. *See* sections 241(g) and 216(c)(4) of the Act. Upon review of the record, we find that the respondent failed to properly file the hardship waiver application, and, consequently, the immigration judge lacked jurisdiction to rule on its merits.

The regulations provide that "Form I-752 [waiver applications] shall be filed with the regional service center director having jurisdiction over the alien's place of residence." 8 C.F.R. § 216.5(c) (1991). They further state that "[n]o appeal shall lie from the decision of the director; however, the alien may seek review of such decision in deportation proceedings." 8 C.F.R. § 216.5(f) (1991). Read together, these sections clearly require that original jurisdiction to rule on the merits of the hardship waiver application rests only with the appropriate regional service center director, and not the immigration judge.

Our interpretation of 8 C.F.R. §§ 216.5(c) and (f) (1991) takes into account the use of varying language in the regulations governing other waivers available under the Act. For example, an application for a waiver under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1988), may be submitted to an immigration judge during the course of exclusion or deportation proceedings "regardless of whether the applicant has made such application previously to the district director."[8] 8 C.F.R. § 212.3(d) (1991). The regulations further provide that section 212(c) applications "may be renewed during proceedings before an immigration judge." *Id.* In addition, an applicant for adjustment of status who is excludable and seeks a waiver under section 212(h) or (i) of the Act may file an application with either "the director or immigration judge considering the application for adjustment of status."[9] 8 C.F.R. § 212.7(a)(ii) (1991).

---

Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, which amended section 216(c)(4) of the Act by eliminating the requirement that the termination of the marriage be "by the alien spouse for good cause." However, since the respondent here failed to properly file his hardship waiver application, the amendment has no impact on the outcome of his case.

[8] An alien eligible for relief under section 212(c) can obtain a waiver of the grounds of exclusion in sections 212(a)(1) through (25), and (30) and (31). Relief under section 212(c) is also available to an alien in deportation proceedings. *See Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).

[9] Under section 212(h) of the Act, certain criminal conduct which would render an alien excludable can be waived. According to section 212(i), aliens excludable under section 212(a)(19) of the Act for committing fraud in obtaining a visa or entry into the United States may be eligible for a waiver.

Still another example may be found in the regulations which govern the filing of an application for a waiver under section 212(k) of the Act. Under 8 C.F.R. § 212.10 (1991), an applicant "may apply to the district director at the port of entry for a waiver under section 212(k) of the Act. If the application for waiver is denied by the district director, the application may be renewed in exclusion proceedings before an immigration judge . . . ."[10] In *Matter of Aurelio*, 19 I&N Dec. 458 (BIA 1987), we found that this language was directory and concluded that it did not preclude the initial adjudication of an application by the immigration judge. In support of our conclusion, we cited instances where similar language was used in the regulations governing other waiver applications and immigration judges were found to have original jurisdiction over the applications. *See* 8 C.F.R. §§ 212.2, 235.7 (1987); *Matter of Ng*, 17 I&N Dec. 63 (BIA 1979); *Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976) (permission to reapply for admission after deportation); 8 C.F.R. §§ 235.7, 242.7a (1987); *Matter of Delagadillo*, 15 I&N Dec. 395 (BIA 1975); *Matter of Salviejo*, 13 I&N Dec. 557 (BIA 1970) (waiver of documents under section 211(b) of the Act, 8 U.S.C. § 1181(b) (1982)). In addition, we noted that 8 C.F.R. § 242.8(a) (1987) gives the immigration judge authority to address section 212(k) applications initially in deportation proceedings.

By contrast, the language of the regulations governing the hardship waiver is mandatory, requiring that Form I-752 be filed with the regional service center director and that the immigration judge shall only review the director's decision. *See* 8 C.F.R. §§ 216.5(c), (f) (1991). Since the respondent failed to submit his waiver application to the regional service center director as prescribed by the regulations, we conclude that the immigration judge lacked jurisdiction to rule on his application.

We note that counsel stated at the deportation hearing that if the hardship waiver had to be referred to the regional service center director, the respondent "would be inclined to withdraw it and just ask for voluntary departure." On appeal, the respondent did not seek to have his hardship waiver adjudicated by the appropriate service center director. In fact, he ignored the jurisdictional issue altogether and merely argued the merits of the application. Having concluded that the immigration judge lacked jurisdiction to rule on the application, we find the respondent's arguments on the merits inapposite.

The remaining issue on appeal concerns the denial of the respondent's application for voluntary departure by the immigration judge.

---

[10] Section 212(k) of the Act waives labor certification, immigrant visa, and quota violations under sections 212(a)(14), (20), and (21) of the Act.

He concluded that since the respondent had assumed the identity of other foreign students and, for money, had taken exams for them at a local college, he did not merit voluntary departure as a matter of discretion.

On appeal, the respondent raises two principal arguments. First, he asserts that the immigration judge erred by admitting into evidence affidavits of the students who had allegedly paid the respondent. He claims that admission of these affidavits into evidence denied him due process by denying him his rights to investigate into their accuracy and to confront or cross-examine the affiants. Secondly, the respondent contends that his scheme on campus alone does not constitute a lack of good moral character to warrant a denial of voluntary departure.

With respect to the respondent's first contention, we find that he was not denied his right to due process. The respondent erroneously asserted that there were several affidavits from students admitted into evidence. After carefully reviewing the transcript of the proceedings, we find that the Service proffered only one student's affidavit into evidence, which was the only such affidavit admitted into evidence and considered by the immigration judge in his decision to deny voluntary departure. Therefore, we will review the immigration judge's consideration of that one student's affidavit. The affidavit, if credited, is probative. It indicates that the respondent assumed the identity of other foreign students and attended classes for them in exchange for money.

At the deportation hearing, the Service presented, as a witness, the investigator who prepared the student's affidavit. The witness, Agent Francis Andrew Lee, testified, in part, about the procedure followed in producing the sworn statement, the manner in which he obtained his information, and the circumstances of the respondent's scheme.[11] In regard to that scheme, the agent testified that, during the semester of December 1989 through May 1990, the respondent attended classes, did homework, and took exams for three students who were enrolled at the Metropolitan State College. He further stated that the affiant was one of the students who had paid the respondent money for this purpose. Finally, he testified that, besides the information provided by the affiant, he had conducted his own investigation of the respondent's activities on campus, and on one occasion, with the assistance of the

---

[11] The agent also testified that he had prepared the affidavit of the respondent's ex-wife, Ms. Tanya Walters. However, when the Service sought to have the ex-wife's affidavit admitted into evidence, counsel for the respondent properly objected on the basis of inability to cross-examine her. The immigration judge continued the hearing to allow the Service an opportunity to bring Ms. Walters to testify in court. Ms. Walters did testify at the continued hearing. There is no evidence in the record that the immigration judge placed any reliance on the ex-wife's affidavit.

campus police, he arrested the respondent upon his completion of a final exam.

At the deportation hearing, counsel for the respondent objected to the admission of the student's affidavit solely because she did not think it was valid. It was only on appeal that counsel first raised an objection to the student's affidavit on the basis of inability to cross-examine the affiant. Even overlooking counsel's failure to raise a specific objection at the hearing, we cannot ignore the fact that counsel waived the right to cross-examine the agent, who had testified that he had conducted his own independent investigation of the respondent's activities on campus. Having waived the opportunity to cross-examine the agent, the respondent cannot now claim to have been prejudiced.[12]

The respondent's failure to cross-examine the agent with respect to his own investigation left the information provided by the agent unchallenged. Consequently, there was sufficient evidence regarding the respondent's scheme on campus, without the student's affidavit, to support the immigration judge's findings. Therefore, we find that the respondent was not denied due process.

The other argument raised by the respondent was that the immigration judge erred in concluding that his scheme on campus constituted a lack of good moral character. In order to obtain voluntary departure, an alien bears the burden of establishing both that he is statutorily eligible for relief and that he merits a favorable exercise of discretion. *See* 8 C.F.R. § 242.17(e) (1991); *Matter of Seda,* 17 I&N Dec. 550 (BIA 1980); *Matter of Turcotte,* 12 I&N Dec. 206 (BIA 1967); *Matter of Mariani,* 11 I&N Dec. 210 (BIA 1965). One of the statutory requirements for voluntary departure is that the alien must have been a person of good moral character for at least 5 years prior to his application. Section 244(e) of the Act, 8 U.S.C. § 1254(e) (1988); *Villanueva-Franco v. INS,* 802 F.2d 327 (9th Cir. 1986); *Delgado-Chavez v. INS,* 765 F.2d 868 (9th Cir. 1985); *Cuevas-Ortega v. INS,* 588 F.2d 1274 (9th Cir. 1979); *Matter of Tsang,* 14 I&N Dec. 294 (BIA 1973). In the instant case, the immigration judge found that the respondent was statutorily eligible for voluntary departure, but he denied it as a matter of discretion. Consequently, we need not consider whether the respondent's behavior on campus constitutes a lack of good moral character as prescribed under section 101(f) of the Act, 8

---

[12]In *Cunanan v. INS,* 856 F.2d 1373 (9th Cir. 1988), a case relied on by the respondent on appeal, the contested affidavit was *not* presented to the alien until the date of the hearing, and the Service, despite the immigration judge's specific request, did not make a reasonable effort to present the affiant as a witness. The instant case is distinguishable because, in *Cunanan,* the agent who prepared the affidavit did not testify at the hearing and there was no supplemental testimony presented in support of the contents of the affidavit.

U.S.C. § 1101(f) (1988). Instead, we must determine whether the immigration judge erred in denying voluntary departure in the exercise of his discretion. We find that he did not.

In exercising discretion on a voluntary departure application, an immigration judge may consider such adverse factors as the alien's prior immigration history, the nature of his entry or entries, and any violations of the immigration and other laws of the United States. *Matter of Gamboa*, 14 I&N Dec. 244 (BIA 1972). Discretion may nevertheless be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs. *Id.*

The immigration judge noted as favorable factors that the respondent has a United States citizen brother and that he desires to complete his education in the United States. In balancing these factors against the respondent's scheme of taking exams for foreign students at a local college, the immigration judge concluded that the respondent did not merit discretionary relief.

We note that there is an additional adverse factor in the record that supports the denial of voluntary departure as a matter of discretion. Although not noted by the immigration judge in his decision, the record reflects that the respondent was convicted of assault in Denver, Colorado, sentenced to 2 days in jail, and placed on probation. Considering the factors discussed by the immigration judge, as well as this additional adverse factor, we find that a favorable exercise of discretion is not warranted in this case. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.