# MATTER OF NWOKOMA

## In Deportation Proceedings

### A-27106733

*Decided by Board October 28, 1994*

The Immigration and Naturalization Service retains authority to deny a Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status (Form I-751) pursuant to section 216(c)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1186a(c)(3)(A) (Supp. IV 1986), notwithstanding the Service's failure to adjudicate the joint petition within 90 days of the interview of the alien and his or her spouse.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1)(D)(i) [8 U.S.C. § 1251(a)(1)(D)(i)]—Conditional resident status terminated

ON BEHALF OF RESPONDENT:
Dick Ginsburg, Esquire[1]
Ginsburg & Neal
Colonial Plaza, Building A, Suite 150
1049 S.W. Baseline
Hillsboro, Oregon 97123

ON BEHALF OF SERVICE:
David B. Hopkins
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members

On February 10, 1993, an immigration judge terminated proceedings in this matter because the Immigration and Naturalization Service had not adjudicated the respondent's Joint Petition to Remove the Conditional Basis of the Alien's Permanent Resident Status (Form I-751) within 90 days of the Service interview regarding the joint petition.[2]

The Service has appealed. The appeal will be sustained and the record remanded to the immigration judge for further proceedings.

The respondent is a 29-year-old native and citizen of Nigeria. On

---

[1] Respondent's counsel has filed a motion to withdraw his appearance. The request is granted for all purposes except receipt of this decision. *See Matter of Rosales,* 19 I&N Dec. 655 (BIA 1988).

[2] The record reflects that on February 23, 1993, the immigration judge entered a supplemental order in which he removed the conditional basis of the respondent's permanent residence.

March 4, 1984, the respondent entered the United States as a nonimmigrant student. On November 17, 1987, the respondent acquired conditional permanent resident status under section 216(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1186a(a)(1) (Supp. IV 1986), by virtue of his marriage to a United States citizen. On or about November 6, 1989, the respondent and his spouse filed a joint petition under section 216(c)(1)(A) of the Act. On January 19, 1990, the respondent and his wife were interviewed by an officer of the Service pursuant to section 216(c)(1)(B) of the Act. On March 25, 1991, more than 14 months after the date of the interview, the Service issued a decision denying the joint petition on the ground that the respondent's marriage was entered into for the purpose of procuring his admission as an immigrant. The Service terminated the respondent's conditional permanent residence on or about January 28, 1992.

Deportation proceedings were accordingly initiated under section 241(a)(1)(D) of the Act, 8 U.S.C. § 1251(a)(1)(D) (Supp. III 1991). At a deportation hearing before the immigration judge on February 10, 1993, the respondent moved to terminate the proceedings because the Service had not adjudicated the joint petition within 90 days of the interview, as required by section 216(c)(3)(A) of the Act. The immigration judge granted the respondent's motion to terminate the proceedings on this basis, and the Service's appeal followed.

On appeal, the Service submits first that it did make a "determination," within 90 days of the interview, that the respondent had not entered into his marriage in good faith. In the alternative, the Service contends that the immigration judge erred by terminating the proceedings due to its failure to adjudicate the joint petition within 90 days of the interview. The Service relies on the Supreme Court's decision in *Brock v. Pierce County*, 476 U.S. 253 (1986), as support for the position that the Service retains authority to deny a joint petition even where the petition has not been adjudicated within 90 days of the interview. In that case, the Supreme Court stated:

> This Court has frequently articulated the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." [citations omitted]. We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.

*Id.* at 260.

Section 216(c)(3)(A) of the Act provides in pertinent part that following an alien's submission of a joint petition and his appearance with his spouse for an interview regarding that petition, "the Attorney General shall make a determination, within 90 days of the date of the

interview, as to whether" the information in the joint petition is true. The regulations, in turn, provide that following submission of the joint petition, "[t]he director shall adjudicate the petition within 90 days of the date of the interview, unless the interview is waived in accordance with paragraph (b)(1) of this section." 8 C.F.R. § 216.4(c) (1994).

We find no merit to the Service's initial argument on appeal. The Service submits that the examining officer who conducted the interview of the respondent and his spouse did make a "determina-tion" concerning the joint petition within 90 days of the interview. According to the Service, the examining officer must have decided that the joint petition should be denied because she prepared a Record of Deportable Alien (Form I-213) immediately after she conducted the interview of the respondent and his spouse. However, the regulations at 8 C.F.R. § 216.4(d)(2) (1990) provide that the Service shall give "written notice" to the alien of the decision to deny a joint petition. The respondent here did not receive "written notice" of the decision to deny the joint petition until, at the earliest, March 1991. We therefore conclude that the Service did not make a "determination," within the meaning of the Act and the regulations, to deny the joint petition within 90 days of the January 1990 interview.

The alternative argument presented by the Service is that the immigration judge misconstrued the Act and the regulations by terminating the proceedings due to the Service's failure to adjudicate the joint petition within 90 days of the interview of the respondent and his spouse. The immigration judge reasoned that the 90-day require-ment for the Service to adjudicate the joint petition is stated in mandatory terms and therefore is binding on the Service. The immigration judge concluded that if the Service does not adjudicate the Form I-751 within 90 days of the interview, the conditional basis of the alien's permanent residence should be removed, and deporta-tion proceedings should be terminated.

Despite the language in the statute and the regulations indicating that the Service "shall" adjudicate the joint petition within 90 days of the interview, the Service contends on appeal that it retains authority to deny a joint petition after the 90-day period has expired. As noted earlier, the Service cites *Brock v. Pierce County, supra,* to support its position that the language of the Act is directory, not mandatory, and does not deprive the Service of jurisdiction over the joint petition after expiration of the 90-day time limit. The Service argues that to hold otherwise would contravene the congressional intent behind the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537 ("IMFA"), which enacted the provisions of section 216 of the Act. The bulk of the Service's argument is based on a legal opinion issued by the General Counsel for the Service on June 21,

1990, entitled "INS' ability to deny petition for change in permanent resident status after expiration of the statutory time limit."

We find that the proper construction of section 216 requires that flexibility be built into this statutory scheme, rather than a rigid adherence to the 90-day provision. We find such an approach to be consistent with the purposes of the Act, as well as with the Supreme Court's decision in *Brock v. Pierce County, supra.* Section 216 of the Act was enacted as part of the IMFA. The purpose of that act was to deter marriage fraud. *See* H.R. Rep. No. 906, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5978. The IMFA created section 216 of the Act as a means of checking the validity of marriages by which aliens have attained permanent resident status. Section 216 provides that an alien spouse who is granted permanent resident status by means of marriage to a United States citizen shall be granted such status on a conditional basis. That condition must be lifted by the approval of a second petition filed within 90 days before the second anniversary of the date on which the alien obtained lawful admission for permanent residence. By requiring the alien and spouse to apply to the Service to lift the conditional basis of the permanent residence, the IMFA was designed to ensure that aliens could not side-step the immigration laws by entering into a fraudulent marriage. *See Matter of Stockwell,* 20 I&N Dec. 309 (BIA 1991).

The Service argues that to preclude it from denying joint petitions when the 90-day limit has not been met would contravene the purpose of the IMFA. The Service further argues that had Congress intended to bestow a benefit on conditional permanent residents who engaged in marriage fraud, merely because the Service failed to act upon their petitions within the deadline, it would have explicitly done so. We agree. Congress' failure to impose a penalty on the Service for failure to abide by the 90-day deadline is in marked contrast to the consequences for an alien who fails to comply with the 90-day requirement for filing the joint petition.[3] The imposition of a penalty on the applicant for failure to timely file the petition is consistent with the purpose of the Act in ensuring that fraudulent marriages are uncovered in a timely manner. Imposing the filing deadline, as well as consequences for failure to do so, ensures that aliens who have entered

---

[3]The Act and the regulations provide that lawful permanent resident status is automatically terminated if the alien and his or her spouse do not file a joint petition to remove the conditional basis of permanent residence within the 90-day period immediately preceding the second anniversary of the date on which the alien obtained lawful permanent residence on a conditional basis. Section 216(c)(2)(A) of the Act; 8 C.F.R. § 216.4(a)(6) (1994); *see also* sections 216(c)(1)(A), (3)(A), (d)(2) of the Act; 8 C.F.R. §§ 216.2(c), 216.4(a)(1) (1994). That deadline may only be waived for good cause shown. Section 216(d)(2)(B) of the Act; 8 C.F.R. § 216.4(a)(6) (1994).

into marriages merely to procure immigration benefits cannot indefinitely prolong their conditional permanent resident status by failing to file the joint petition during the requisite period.

In contrast, while Congress clearly intended for the adjudication process to proceed in a timely manner (as indicated by the deadlines for interviewing and for adjudicating the petitions), Congress did not provide for the alien to be granted benefits regardless of merit where the Service did not comply with the deadlines. To do so would have sacrificed the central purpose of IMFA, namely, preventing the acquisition of immigration benefits by fraudulent marriages, to the cause of efficiency.

Accordingly, we concur with the Service that the deadline imposed upon the Service falls within the holding of the Supreme Court in *Brock v. Pierce County, supra. See also Saratoga Savings and Loan v. Federal Home Loan Bank*, 879 F.2d 689 (9th Cir. 1989); *Sierra Pacific Industries v. Lyng*, 866 F.2d 1099 (9th Cir. 1989). As was the case there, the Act nowhere specifies the consequences of a failure by the government agency to meet the statutory deadline. *Brock v. Pierce County, supra*, at 259. Moreover, just as in *Brock*, the remedy suggested here for the Service's failure to meet the deadline (automatic lifting of the conditional basis of the permanent resident status) would run directly counter to the fundamental purpose of the statutory provisions in question, namely, to prevent and deter marriage fraud. *Id.* at 263-64.

It is, of course, well settled that when interpreting a statute, the plain meaning of the words used in the statute should ordinarily be applied. There is a "strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, 480 U.S. 412, 432 n.12 (1987); *see also Matter of Lemhammad*, 20 I&N Dec. 316, 320-21 (BIA 1991). In *Brock v. Pierce County, Supra*, at 262, however, the Supreme Court declined to interpret the language in section 106(b) of the Comprehensive Employment and Training Act ("CETA"), Pub. L. No. 95-524, 92 Stat. 1909, 1926 (1978), *codified at* 29 U.S.C. § 816(b) (Supp. V 1981), which provided that the Secretary of Labor "shall" issue a final determination regarding alleged abuse of CETA funds within 120 days of the receipt of the complaint, in such a manner as to preclude the Secretary from taking action after the 120-day period had expired.[4] Similarly in this case, and notwithstanding the language in section 216(c)(3)(A) which provides that the "Attorney General shall" adjudicate the joint petition with 90 days of the interview, we conclude that the Service retains authority to deny a

---

[4]CETA was repealed by the Job Training Partnership Act, Pub. L. No. 97-300, § 184(a), 96 Stat. 1322, 1357 (1982). *See Brock v. Pierce County, supra*, at 255 n.1.

joint petition even in those cases where it fails to take action prior to the end of the 90-day period. We observe that if we were to treat the language that the "Attorney General shall" adjudicate within 90 days of the interview as mandatory, we would not only have to ignore the legislative history in IMFA regarding prevention of marriage fraud, we would also have to overlook the statutory language in section 216(c)(3)(B) of the Act, which provides for removal of the conditional basis of an alien's permanent residence only where the Attorney General determines that the "facts and information [in a joint petition] are true." For all of the foregoing reasons, we conclude that the statutory language concerning the 90-day period for adjudication of the joint petition is merely directory, and not mandatory.

We note finally that the Supreme Court stated in *Brock v. Pierce County, supra,* that "[w]hen as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." *Id.* at 260. One of the less drastic remedies suggested by the Court in that case was resort to a suit in federal district court to compel agency action on the basis of the Administrative Procedures Act ("APA"). *Id.* at 260 n.7. We point out that, while deportation proceedings are exempt from the provisions of the APA, rulemaking under the Act and other agency actions are not included within that exemption. *See Matter of Anselmo,* 20 I&N Dec. 25 (BIA 1989); *Matter of Fedorenko,* 19 I&N Dec. 57, 63-64 (BIA 1984).

We conclude that the Service's failure to abide by the 90-day deadline does not result in the Service's loss of jurisdiction over the joint petition or in the automatic removal of the conditional basis of the respondent's lawful permanent resident status. Whether the 90-day deadline imposed on the Service is enforceable by some other means in another forum is not for us to decide here. Accordingly, the appeal will be sustained, the decision of the immigration judge terminating proceedings reversed, and the record remanded for further proceedings. On remand, the Service retains the burden of proving the respondent's deportability pursuant to section 216(c)(3)(D) of the Act.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The decision of the immigration judge terminating proceedings is reversed and the record is remanded to the immigration judge for further proceedings.